# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| MODERN MORTGAGE LENDING, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 3:25-cv-00842<br>Judge Aleta A. Trauger |
| CHRISTOPHER SANDERS, RICHARD SANDERS, V.I.P. MORTGAGE, INC., CHAD ANDERSON | ) ) ) ) | |
| Defendants, | ) ) | |

## MEMORANDUM

Plaintiff Modern Mortgage Lending, Inc. ("Modern"), a mortgage broker, has brought suit against its competitor and three former employees. Defendant Chad Anderson filed a Motion to Dismiss, seeking dismissal of all of the claims against him. (Doc. No. 35.) The other defendants filed a Partial Motion to Dismiss, seeking dismissal of some of the claims against them. (Doc. No. 30.) For the reasons set forth herein, both Motions will be denied.

## I. PROCEDURAL HISTORY

Modern originally brought this action against Christopher Sanders ("C. Sanders"), Richard Sanders ("R. Sanders") (collectively, the "Sanderses"), and V.I.P. Mortgage, Inc. ("VIP") (with the Sanderses, the "VIP Defendants"), asserting eight "Counts." (Doc. No. 1.) With leave (Doc. No. 20), Modern filed the operative Verified Amended Complaint, which adds Chad Anderson as a defendant and includes fifteen causes of action. ("FAC," Doc. No. 21.) The plaintiff also filed Exhibits. (Doc. Nos. 21-1 through 21-5.) The VIP Defendants filed an Answer. (Doc. No. 29.)

The VIP Defendants filed a Partial Motion to Dismiss (Doc. No. 30) shortly after filing their Answer, seeking dismissal of Counts 5–10 and 14–15 of the FAC, under Rule 12(b)(6) of the

Federal Rules of Civil Procedure, with an accompanying Memorandum (Doc. No. 30-1), to which the plaintiff filed a Response (Doc. No. 37), and in further support of which the VIP Defendants filed a Reply (Doc. No. 39). Anderson filed a Motion to Dismiss (Doc. No. 35), seeking dismissal of all of the claims against him, also under Rule 12(b)(6), with an accompanying Memorandum (Doc. No. 36), to which the plaintiff filed a Response (Doc. No. 40), and in further support of which Anderson filed a Reply (Doc. No. 41).

## II.      LEGAL STANDARD – RULE 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the complaint's legal sufficiency. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (quoting Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). But a complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557). In ruling on a motion to dismiss for failure to state a claim, the court accepts the complaint's well-pleaded allegations as true, construes the complaint in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. *Eastep v. City of Nashville*, 156 F.4th 819, 826 (6th Cir. 2025) (citing *Courtright v. City of Battle Creek*, 839 F.3d 513, 517 (6th Cir. 2016)), *cert. denied sub nom. Eastep v. Carrick*, 146 S. Ct. 1816 (2026).

When presented with a Rule 12(b)(6) motion, the court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits

2

attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). Otherwise, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

## III.    FACTS

Modern, a mortgage broker, hired the Sanderses and Anderson (collectively, the "Individual Defendants") as "Outside Sales Loan Officer[s]" in 2022. (FAC ¶¶ 13–16.) Their employment was governed at least partially by signed employment agreements. (Doc. Nos. 21-1 (R. Sanders), 21-2 (C. Sanders), 21-3 (Anderson).)

The Sanderses resigned from Modern "on or about" on September 30, 2024 and thereafter began working for VIP. (*Id.* ¶¶ 19, 97.) On October 1, 2024, without authorization but purportedly on behalf of Modern, Anderson  signed an agreement (the "Mutual Agreement") (Doc. No. 12-1[1]) between Modern and VIP, falsely representing himself as Modern's "Partner, VP of Lending." (*Id.* ¶¶ 20–21.) In short, the Mutual Agreement allowed for the transfer of customers and customer data from Modern to VIP. The Mutual Agreement explains that "a team comprised of" the Sanderses "desires to transfer its staff to VIP, the goal being to make the transition as seamless as possible for the customers and borrowers involved." (Doc. No. 12-1 at 2.) According to the Mutual Agreement, "[e]mployees who transfer to VIP will be allowed to solicit their borrowers in process.

---

[1] The VIP Defendants note that they attached the Mutual Agreement to their Answer to the original Complaint. (Doc. No. 30-1 at 2 n.2 (citing Doc. No. 12-1).) The plaintiff refers to the Mutual Agreement throughout the FAC (*see, e.g.*, FAC ¶¶ 20–23, 34–35), and, in its Response, does not object to the VIP Defendants' citation thereof. The court will consider the Mutual Agreement as though it had been filed with the FAC.

3

Loans expected to close in October 2024 or afterwards would have the opportunity to move to VIP." (*Id.*)

On October 2, 2024, days after their resignation from Modern, C. Sanders sent R. Sanders an email containing Modern's confidential client information. (FAC ¶ 24 (citing Doc. No. 21-4).) In addition to the October 2 email, "prior to and around the time" they left Modern, the Sanderses also sent "proprietary and confidential information" to their personal email addresses and "attempted to delete electronic mail and other data and information from Plaintiff's IT systems in an effort to conceal their misconduct." (*Id.* ¶ 27.) All told, the Sanderses took from Modern "customer lists, loan files, and borrower data." (*Id.* ¶ 95.) As a result, the Sanderses allegedly "have profited from providing mortgage financing with V.I.P. Mortgage from clients that belonged to Plaintiff and whose names were included in confidential materials." (*Id.* ¶ 26.) Specifically, Modern has "discovered 22 transactions that closed since [the Sanderses'] departure, which would have belonged to Plaintiff but for [the Sanderses]' violation of their duties under their executed employment agreements." (*Id.* ¶ 28.) In addition to siphoning clients, the Sanderses also operated a website "using Plaintiff's logo and image displaying 'Modern Lending.'" (*Id.* ¶ 29 (citing Doc. No. 21-5).)

Based on these allegations, Modern asserts the following claims:

(1) breach of contract, against Anderson (*id.* ¶¶ 31–36);

(2) fraud, against Anderson (*id.* ¶¶ 37–48);

(3) breach of contract, against the Sanderses (*id.* ¶¶ 49–54);

(4) violation of the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. § 47-25-1701 *et seq.*, against the Sanderses (*id.* ¶¶ 55–60);

(5) violation of the Tennessee Trademark Act, Tenn. Code Ann. § 47-25-501 *et seq.*, against the Sanderses (*id.* ¶¶ 60–65);

4

(6) violation of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101, *et seq.*, against the Sanderses (*id.* ¶¶ 66–70);[2]

(7) "Unlawful Disclosure and Misuse of Nonpublic Personal Information in Violation of Privacy Obligations Under the Gramm–Leach–Bliley Act and Related State Law Duties," against all defendants (*id.* ¶¶ *65–77);[3]

(8) intentional interference with business relations, against the Individual Defendants (*id.* ¶¶ 78–83);

(9) conversion, against all defendants (*id.* ¶¶ 84–88);

(10) civil conspiracy, against the Individual Defendants (*id.* ¶¶ 89–93);

(11) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, against the VIP Defendants (*id.* ¶¶ 94–100);

(12) violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, against the VIP Defendants (*id.* ¶¶ 101–07);

(13) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, against the Individual Defendants (*id.* ¶¶ 108–13);

(14) breach of "Fiduciary Duty – Duty of Loyalty," against the Individual Defendants (*id.* ¶¶ 114–20);

(15) tortious interference with contractual relations, against VIP (*id.* ¶¶ 121–126).

The plaintiff seeks compensatory, punitive, and treble damages, a declaration that the Mutual Agreement is null and void, and a "permanent injunction enjoining Defendants from using Plaintiff's trade name, logo, trade secrets, and confidential information." (*Id.* ¶¶ 126–131; *id.* at 21–22.)

---

[2] While every other "Count" specifies in parentheses against whom it is brought, "Count 6" does not, but the language within that count makes it clear that it is brought against the Sanderses. (*See, e.g.*, FAC ¶ 67 ("Defendants Christopher Sanders and Richard Sanders' conduct constitutes a violation of [the TCPA].").)

[3] The FAC duplicates several paragraph numbers. There are two each of paragraphs 65–70. The court refers to the second such paragraphs with an asterisk. *E.g.*, "FAC ¶ *65."

5

## IV. ANALYSIS

### A. Jurisdiction

The court has diversity jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, the plaintiff is a citizen of California, and the defendants are citizens of Tennessee and Arizona. (FAC ¶¶ 1, 9, 10.)

### B. VIP Defendants' Partial Motion to Dismiss

Parties cannot file Rule 12(b) motions after filing an answer. Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made *before pleading* if a responsive pleading is allowed." (emphasis added)). The VIP Defendants filed the Partial Motion to Dismiss (Doc. No. 30), under Rule 12(b)(6), *after*—albeit, five minutes after—their Answer (Doc. No. 29), so it was technically untimely. *Id.* Courts sometimes construe untimely Rule 12(b)(6) motions as motions for judgment on the pleadings under Rule 12(c). *See Igo v. Sun Life Assurance Co. of Can.*, 652 F. Supp. 3d 929, 934 n.1 (S.D. Ohio 2023) (citing *Doe v. Sentech Emp. Servs., Inc.*, 186 F. Supp. 3d 732, 736 (E.D. Mich. 2016)). And the standards of review for Rule 12(b)(6) and Rule 12(c) motions are the same. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001)).

However, a party may move for judgment on the pleadings only "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). "[T]he pleadings are not closed until all defendants have filed an answer, even when one defendant has filed a motion to dismiss instead of answering." *Hoskins v. Knox Cnty.*, No. CV 17-84-DLB-HAI, 2018 WL 1352163, at *3 (E.D. Ky. Mar. 15, 2018) (quoting *Wells Fargo Fin. Leasing, Inc. v. Griffin*, 970 F. Supp. 2d 700, 705 (W.D. Ky. 2013)). Anderson has filed a Motion to Dismiss (Doc. No. 35) instead of answering, so the pleadings are not closed. Were the court to construe the VIP Defendants' Motion as a Rule 12(c) motion, it would be premature. Thus, while "courts typically will construe a premature Rule 12(c) motion[] as if it

6

were brought under Rule 12(b), and a late Rule 12(b) motion . . . as if it were brought under Rule 12(c)" 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed. Apr. 2026 Update), neither motion is procedurally proper at this point.

In any event, the VIP Defendants move to dismiss only some of the claims against them. (Doc. No. 30 at 1 (moving to dismiss Counts 5–10, 14–15).) Even if the court were to grant the Motion—construed under either Rule 12(b)(6) or 12(c)——Counts 11–12 would remain pending against the Sanderses and VIP, meaning that the case will proceed to discovery no matter the court's ruling on the VIP Defendants' Partial Motion to Dismiss. In the interest of judicial economy, therefore, the court declines to rule on the merits of the Partial Motion to Dismiss and will instead address the issues raised therein upon a motion for summary judgment or at trial.

### C.      Anderson's Motion to Dismiss

In his Memorandum, Anderson provides "[t]he truth" about his "motivations [and] role in the transfer of the customer information." (Doc. No. 36 at 2.) In its Response, the plaintiff argues that, because Anderson relies on matters outside the pleadings, "to the extent the court relies upon any of the new alleged facts," it must convert Anderson's Motion to Dismiss into a motion for summary judgment. (Doc. No. 40 at 2–4.) Anderson replies that the new facts were "provided only as background information" and that his argument does not rely on them. (Doc. No. 41 at 1.) The court declines to consider the additional facts Anderson propounds and so will not convert the Motion to Dismiss into a motion for summary judgment. *Accord Caraway v. CoreCivic of Tenn., LLC*, 98 F.4th 679, 688 (6th Cir. 2024) ("Faced with matters outside the pleadings, district courts have 'complete discretion' to accept them (and treat the motion as one for summary judgment) or ignore them (and treat the motion as one to dismiss)." (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (3d ed. 2024))).

7

Anderson moves to dismiss all of the claims against him, including breach of contract (Count 1). (Doc. No. 35 at 1.) The plaintiff alleges that Anderson breached the employment agreement he signed in 2022 ("Employment Agreement"). (FAC ¶¶ 31–36.) Courts sitting in diversity apply state substantive law. *Berk v. Choy*, 607 U.S. 187, 192 (2026) (citing 28 U.S.C. § 1652). The parties both apply Tennessee law (Doc. No. 36 at 5–6; Doc. No. 40 at 9–10), so the court will as well. The elements of a breach of contract under Tennessee law are the existence of a contract, breach, and damages. *Edward Jackson Younger Fam. Irrevocable Tr. by & through Younger v. Ross*, No. E2024-01338-COA-R3-CV, 2025 WL 3158820, at *16 (Tenn. Ct. App. Nov. 12, 2025) (citations omitted), *appeal denied* (Mar. 30, 2026). Anderson argues only that he did not breach his Employment Agreement. (Doc. No. 36 at 5; Doc. No. 41 at 3–4.)

Anderson's Employment Agreement contains provisions regarding confidentiality that state, in relevant part,:

> You . . . agree to maintain in confidence, any confidential information, trade secrets, or proprietary data which you learn, become privy to, or might have access to during the course of your employment . . . . This includes, but is not limited to employee information, inventions, innovations, processes, research, reports, market studies and plans, customer and/or supplier information, or any other confidential technical or business information. During the course of your employment, or unless authorized by [Modern] you will not sell, use, publish, make copies of, or disclose such Confidential Information to any other person or company.

(Doc. No. 21-3 at 3.) Without the authority to do so, Anderson executed the Mutual Agreement with VIP on behalf of Modern, and in so doing falsely identified himself as "Partner, VP of Lending." (FAC ¶¶ 20–21.) The Mutual Agreement is roughly one page in length, and its terms, such as they are, are quite limited. At times it appears to be in the form of a letter from VIP to Modern. (*See, e.g.*, Doc. No. 12-1 at 2 ("[W]e kindly request that you initiate the transfer of this information.").) The stated purpose of the Mutual Agreement is "to make the transition" of the Sanderses from Modern to VIP "as seamless as possible for the customers and borrowers

8

involved." (*Id.*) Therefore, the Mutual Agreement continues, "VIP respectfully requests the transfer of loan documentation for files that will close on or after 10/1/2024." (*Id.*) Further, "VIP kindly requests your acceptance in transferring the borrowers' files and borrower provided documentation . . . to . . . V.I.P. Mortgage, Inc." (*Id.*) It continues, "we kindly request that you initiate the transfer of this information to ensure a smooth transition for all borrowers affected." (*Id.*) Anderson, purportedly on behalf of Modern, "[a]greed to" the foregoing. (*Id.* at 3.)

The FAC alleges that Anderson breached the Employment Agreement by exceeding his authority by signing the Mutual Agreement, which led to the loss of confidential information and twenty-two transactions the Sanderses took with them to VIP. (FAC ¶¶ 33–36.) Anderson argues that the Employment Agreement contains no provision requiring him to act within the scope of his authority, and Tennessee contract law frowns on implied obligations. (Doc. No. 36 at 5–6.) Thus, Anderson argues, Modern attempts to convert a tort claim into a breach of contract claim. (*Id.* at 6.) Modern responds that Anderson also breached his contractual confidentiality obligations, described above, as well as the implied covenant of good faith and fair dealing by "knowingly misrepresenting his authority to attempt to enter into the 'Mutual Agreement' with a direct competitor on behalf of Plaintiff, and thereby ultimately facilitating the transfer . . . of 'Confidential Information' (as defined by the Employment Agreement) to V.I.P. Mortgage." (Doc. No. 40 at 9–10.) Anderson replies that his signing the Mutual Agreement did not constitute the disclosure of confidential information: "however Anderson's signing of the contract might be characterized, it was not the sale, use, copying, or disclosure of confidential information." (Doc. No. 41 at 3–4.) Rather, Anderson argues, the FAC alleges that only the Sanderses misappropriated confidential information. (*Id.*)

9

Purportedly on behalf of the plaintiff, Anderson "[a]greed" to "initiate the transfer" of "loan documentation for files," including "borrowers' files and borrower provided documentation," to VIP. (Doc. No. 12-1 at 2.) While Anderson is correct that only the Sanderses are alleged to have directly transferred confidential information, as alleged, Anderson did not "maintain in confidence . . . confidential information." (Doc. No. 21-3 at 3.) Rather, he authorized the "disclos[ure]" of "Confidential information to . . . [an]other person or company," in violation of his Employment Agreement. (*Id.*) The plaintiff has stated a colorable breach of contract claim.

Because the plaintiff has stated a breach of contract claim against Anderson, the parties will proceed to discovery. For the same reasons that judicial economy counsels against the court's ruling on the merits of the VIP Defendants' Partial Motion to Dismiss, the court declines to rule on the merits of the remaining claims against Anderson. He may renew any such arguments in a motion for summary judgment or at trial.

## V.    CONCLUSION

The VIP Defendants' Partial Motion to Dismiss (Doc. No. 30) and Anderson's Motion to Dismiss (Doc. No. 35), will be denied.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge

10